IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| NATIONAL CITY BANK OF INDIANA,<br>One National City Center<br>Indianapolis, IN 46255<br><br>NATIONAL CITY MORTGAGE COMPANY,<br>3232 Newmark Dr.<br>Miamisburg, OH 45342<br><br>and FIRST FRANKLIN FINANCIAL CORPORATION,<br>150 Allegheny Mall<br>Pittsburgh, PA 15212<br><br>Plaintiffs,<br>v.<br><br>CHARLES W. TURNBAUGH, in his official capacity as Commissioner of Financial Regulation, Maryland Department of Labor, Licensing, and Regulation<br><br>500 North Calvert St.<br>Suite 402<br>Baltimore, MD 21202-3651<br><br>Resident of the City of Baltimore, MD<br><br>Defendant. | Civil Action No. ____________ |

**COMPLAINT FOR DECLARATORY RELIEF,**
**<u>PRELIMINARY INJUCTION, AND PERMANENT INJUNCTION</u>**

1. Federal law provides that the Office of the Comptroller of the Currency ("OCC") is the exclusive supervisory authority over national banks and their operating subsidiaries. Maryland law, in conflict with federal law, provides that operating subsidiaries of national banks must be licensed by the Maryland Department of Labor, Licensing and Regulation ("Department"), through Defendant Commissioner, and must be subject to the Commissioner's regulatory, supervisory, examination, and

enforcement jurisdiction, in order to make and service residential mortgage loans in Maryland. In addition, Maryland law restricts the amount of prepayment fees mortgage lenders may impose, while federal law expressly preempts state law restrictions on prepayment fees charged by those entities. Federal law directly conflicts with these Maryland laws, and therefore the Maryland laws are preempted under the Supremacy Clause of the Constitution of the United States.

2. By letter dated June 29, 2004, the Commissioner has asserted that First Franklin Financial Corporation ("First Franklin"), a wholly-owned operating subsidiary of a national bank, has violated a Maryland state law that restricts prepayment fees on adjustable rate mortgages ("ARMs"). In response, First Franklin waived its right to collect prepayment fees with respect to the particular mortgage loan addressed by the Commissioner's letter, but reserved its rights with respect to hundreds of other ARMs issued by First Franklin in Maryland. By letter dated July 28, 2004, the Commissioner questioned whether a second mortgage loan by First Franklin violates Maryland's restriction on prepayment fees. In response to this letter, First Franklin asserted its rights under federal law and declined to waive the prepayment fee. The Commissioner has deemed First Franklin to be subject to his jurisdiction and regulation under the Maryland Mortgage Lender Law, Md. Code Ann. Fin. Inst. §§ 11-501 *et seq.*

3. This complaint accordingly seeks declaratory and injunctive relief on behalf of National City Bank of Indiana, a federally chartered national bank, and its wholly owned operating subsidiaries First Franklin and National City Mortgage Company ("NCMC"), both of which are wholly owned and operated by National City Bank pursuant to the National Bank Act and regulations promulgated under that Act by the OCC.

4. The OCC is the federal agency responsible for interpreting and applying the National Bank Act. Under that Act and OCC regulations, the OCC has exclusive licensing, regulatory, supervisory, examination, and enforcement authority over National City Bank of Indiana, First Franklin,

and NCMC. Accordingly, the OCC can, and does, regulate and regularly examine National City Bank, First Franklin, and NCMC to enforce their compliance with both federal and non-preempted state laws.

5. Pursuant to 12 U.S.C. § 371(a), "[a]ny national banking association may make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate, subject to section 1828(*o*) of this title and such restrictions and requirements as the Comptroller of the Currency may prescribe by regulation or order." The OCC has promulgated a regulation that expressly provides: "A national bank offering or purchasing ARM loans may impose fees for prepayments notwithstanding any State law limitations to the contrary." 12 C.F.R. § 34.23; *see also id.* § 34.21 ("A national bank and its subsidiaries may make, sell, purchase, participate in, or otherwise deal in ARM loans and interests therein without regard to any State law limitations on those activities.").

6. Maryland Code Ann. Com. Law § 12-105(b)(4) (the "Prepayment Restriction") restricts prepayment fees that mortgage lenders may charge to: (i) those imposed within three years of sale; at (ii) an amount no greater than "two months' advance interest on the aggregate amount of all prepayments made in any 12-month period in excess of one third of the amount of the original loan."

7. National City Bank of Indiana, First Franklin, and NCMC, faced with the Commissioner's demand that First Franklin comply with the preempted Maryland Prepayment Restriction in violation of the OCC's exclusive federal supervisory jurisdiction, bring this suit against the Commissioner for declaratory and injunctive relief to vindicate the federal rights of National City Bank of Indiana, NCMC, and First Franklin under the Supremacy Clause of the Constitution of the United States, the National Bank Act, and implementing OCC regulations.

**Jurisdiction and Venue**

8. This action is brought under the National Bank Act, the Supremacy Clause of the United States Constitution, and 42 U.S.C. § 1983. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because it arises under the Constitution and laws of the United States. In addition, jurisdiction is proper under 28 U.S.C. § 1343(a)(3), because Defendant, under color of state law, seeks

to deprive Plaintiffs of their federal constitutional rights. This Court is authorized to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

9. Venue in this district is proper under 28 U.S.C. § 1391(b)(1), because the Defendant resides in this district.

**The Parties**

10. National City Bank of Indiana is a national banking association organized and existing under the National Bank Act, 12 U.S.C. § 21 *et seq*. National City Bank of Indiana maintains its main office and principal place of business in Indianapolis, Indiana. National City Bank has no branches in Maryland. Pursuant to the National Bank Act and implementing OCC regulations, National City Bank of Indiana has established, wholly owns, and operates First Franklin and NCMC as operating subsidiaries to conduct the Bank's residential mortgage lending.

11. First Franklin is organized as an operating subsidiary of National City Bank of Indiana pursuant to OCC regulations issued under the National Bank Act. First Franklin is incorporated in Delaware and has its principal place of business in San Jose, California. First Franklin engages in residential mortgage lending throughout the United States, including Maryland. First Franklin provides ARMs in Maryland to which the Maryland Prepayment Restriction purportedly applies.

12. NCMC is also organized as an operating subsidiary of National City Bank of Indiana pursuant to OCC regulations issued under the National Bank Act. NCMC is incorporated in Ohio and has its principal place of business in Miamisburg, Ohio. NCMC engages in residential mortgage lending throughout the United States, including Maryland.

13. Defendant Charles W. Turnbaugh is the Commissioner of Financial Regulation of the Maryland Department of Labor, Licensing, and Regulation. As such, he is the state official charged under Md. Code Ann. Fin. Inst. §§ 11-501 *et seq.* (the "Maryland Mortgage Lender Law") with enforcing the state statutes providing for the licensing, regulation, supervision, examination, and enforcement of applicable laws against Maryland residential mortgage lenders that are subject to

Maryland's mortgage licensing laws. The Commissioner is also the state official charged with enforcing the Maryland Prepayment Penalty Restriction against Maryland residential mortgage lenders subject to Maryland law. *Id.* § 11-515.

**The National Bank Act and OCC Regulations**

14. National banks are federally-chartered institutions created under and governed by the National Bank Act, 12 U.S.C. § 21 *et seq*.

15. Under the National Bank Act and other federal banking laws, the OCC has exclusive licensing, regulatory, supervisory, examination, and enforcement authority with respect to national banks' compliance with both federal and non-preempted state laws. *See* 12 U.S.C. §§ 24(Seventh), 484(a), 1818(b); *see also* 12 C.F.R. § 7.4000. Under federal law, national banks are not required to obtain a state license before doing business in that state. *E.g.*, *First Nat'l Bank of Eastern Ark. v. Taylor*, 907 F.2d 775, 776 n.6, 778 (8th Cir. 1990); *Bank of America, Nat'l Trust & Sav. Ass'n v. Lima*, 103 F. Supp. 916, 917-18 (D. Mass. 1952).

16. Congress has authorized national banks to receive deposits, loan money, and to exercise "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24(Seventh). These incidental powers under 12 U.S.C. § 24(Seventh) include the authority to provide banking services through operating subsidiaries.

17. Under an OCC regulation interpreting and implementing § 24(Seventh), 12 C.F.R. § 5.34, national banks are expressly authorized to establish and own operating subsidiaries, which may conduct only activities that are lawful activities for the parent national bank itself. 12 C.F.R. § 5.34(d)(1). The OCC's operating-subsidiary regulation further provides for a licensing application to and approval from the OCC before an operating subsidiary is established or acquired by a national bank. *See*, *e.g.*, *id.* § 5.34(e)(5). The OCC's regulation also makes clear that operating subsidiaries are subject to the OCC's ongoing supervision, regulation, examination, and enforcement authority. *See id.* § 5.34(e)(3).

18. Because operating subsidiaries conduct only national bank-authorized activities, and therefore function as separately-incorporated divisions or departments of the national bank itself, and because operating subsidiaries are subject to ongoing licensing, regulation, supervision, examination, and enforcement by the OCC, the OCC's regulations further provide that, "[u]nless otherwise provided by Federal law or OCC regulation, State laws apply to national bank operating subsidiaries to the same extent that those laws apply to the parent national bank." 12 C.F.R. § 7.4006.

19. Under 12 U.S.C. § 484(a), "[n]o national bank shall be subject to any visitorial powers except as authorized by Federal law, vested in the courts of justice or such as shall be, or have been exercised or directed by Congress or by either House thereof or by any committee of Congress or of either House duly authorized." Section 484(b) provides a limited exemption to this exclusive federal regulatory, supervisory, and examination jurisdiction of national banks but only "to ensure compliance with applicable State unclaimed property or escheat laws upon reasonable cause to believe that the bank has failed to comply with such laws." 12 U.S.C. § 484(b).

20. Interpreting § 484, the OCC's regulations provide that "[o]nly the OCC or an authorized representative of the OCC may exercise visitorial powers with respect to national banks, except as provided [in the OCC's regulation interpreting 12 U.S.C. § 484(b)]. State officials may not exercise visitorial powers with respect to national banks, such as conducting examinations, inspecting or requiring the production of books or records of national banks, or prosecuting enforcement actions, except in limited circumstances authorized by federal law." 12 C.F.R. § 7.4000(a)(1). The OCC's regulation defines "visitorial powers" to include "[e]xamination of a bank"; "[i]nspection of a bank's books and records"; "[r]egulation and supervision of activities authorized or permitted pursuant to federal banking law"; and "[e]nforcing compliance with any applicable federal or state laws concerning those activities." *Id.* § 7.4000(a)(2). Further, by virtue of 12 C.F.R. § 7.4006, the protections afforded to national banks from state licensing, regulation, supervision, examination, and enforcement also apply to operating subsidiaries of national banks.

21. The First Senior Deputy Comptroller and Chief Counsel of the OCC has issued a letter confirming that "pursuant to 12 U.S.C. § 484, and 12 C.F.R. §§ 5.34(e)(3) and 7.4006, the OCC has exclusive visitorial authority over national banks and their operating subsidiaries except where *Federal* law provides otherwise." (Ex. 1 hereto, p. 2.) The OCC's letter continues: "As a result, States are precluded from examining or requiring information from national banks or their operating subsidiaries." *Id.* The OCC explains that "it is well established that a State may not condition a national bank's exercise of a permissible Federal power on obtaining the State's prior approval, including the imposition of State licensing requirements as a predicate to the exercise of that power. The result is the same whether the national bank exercises the power directly, or through an operating subsidiary that has been licensed by the OCC. In both cases, the bank, or the operating subsidiary, has obtained a *Federal* license to conduct its business." *Id.* at 6. This letter follows earlier letters issued by the OCC to the same effect.

22. In addition, the OCC has filed briefs as *amicus curiae* in *Wells Fargo Bank, N.A. v. Boutris*, 265 F. Supp. 2d 1162 (E.D. Cal. 2003), *National City Bank v. Boutris*, No. CIV. S-03-0655 GEB, 2003 WL 21536818 (E.D. Cal. Jul 02, 2003), *Wachovia Bank, N.A. v. Burke*, 319 F. Supp. 2d 275 (D. Conn. 2004), and *Wachovia Bank, N.A. et al. v. Watters*, No. 5:03-cv-00105-RHB (W.D. Mich.), confirming that operating subsidiaries of national banks are subject to the exclusive visitorial powers of the OCC and states cannot exercise any licensing, regulatory, supervisory, or enforcement authority over such entities. Accordingly, the OCC argued in its briefs, efforts by state banking officials to exercise visitorial powers over operating subsidiaries of national banks, and to interfere with their federally-authorized banking activities, are preempted.

23. Pursuant to 12 U.S.C. § 371(a), "[a]ny national banking association may make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate, subject to section 1828(*o*) of this title and such restrictions and requirements as the Comptroller of the Currency may prescribe by regulation or order." The OCC has promulgated a regulation, codified at 12 C.F.R.

§ 34.23, that expressly provides: "A national bank offering or purchasing ARM loans may impose fees for prepayments notwithstanding any State law limitations to the contrary." *See also id.* § 34.21 ("A national bank and its subsidiaries may make, sell, purchase, participate in, or otherwise deal in ARM loans and interests therein without regard to any State law limitations on those activities.").

24. The OCC has issued a letter confirming that national banks may impose prepayment fees in connection with purchase money ARM loans under the OCC's ARM regulation notwithstanding state law. *See* Letter of Nov. 4, 1999 from Eric Thompson, Director, Bank Activities and Structure, to Gregory J. Pulles, General Counsel, TCF Financial Corporation. The letter confirms that 12 U.S.C. § 371 "specifically provides authority for national banks to make real estate loans subject to OCC regulations and orders," and "[t]he OCC ARM regulations themselves contain an express preemption of state law restrictions on prepayment fees." (Exhibit 2, hereto, at pp. 1-2). The letter explains that the OCC "has long recognized that the ability to charge prepayment fees in connection with ARM loans provides lenders and borrowers with additional flexibility," and this "could encourage the development of ARMs with relatively slow-moving interest rate indexes and long adjustment periods." *Id.*

25. The Maryland Mortgage Lender Law includes provisions concerning licensing requirements, the Commissioner's examination authority, and enforcement of state law. Mortgage bankers and persons engaged in the secondary mortgage loan business in Maryland, among others, are required to apply for and obtain a state license. National banks are exempted from this licensing requirement, but their subsidiaries are not. *See* Md. Code Ann. Fin. Inst. §§ 11-502, 11-504. The state law authorizes the Commissioner to conduct examinations of any lender not exempted from the Mortgage Lender Law. *Id.* §§ 11-513, 11-515. The Commissioner is also authorized to seek an injunction on behalf of the State against a person or institution to enjoin continuing practices that violate Maryland law. *Id.* § 11-517(c)(1). The Commissioner may also seek penalties of up to $1,000 for each violation of the Mortgage Lender Law. *Id.* § 11-517(c)(1)(ii). Pursuant to Md. Code Ann. Fin. Inst.

§11-523(b), the borrower is authorized to bring an action seeking to recover a prepayment penalty, plus interest, fees, and other costs in state court.

**The Present Controversy**

26. National City Bank of Indiana owns operating subsidiaries, First Franklin and NCMC, to undertake a portion of the Bank's residential mortgage lending business throughout the United States, including Maryland. In doing so, the Bank has exercised its federal authority under 12 U.S.C. § 24(Seventh), and OCC regulations interpreting that statute, 12 C.F.R. § 5.34, by applying for and receiving the OCC's permission to establish, acquire, and operate First Franklin and NCMC.

27. First Franklin and NCMC function as separately incorporated departments or divisions of the Bank. First Franklin and NCMC, just like National City Bank of Indiana itself, are subject to ongoing licensing, regulation, supervision, and enforcement by the OCC, and have been examined by the OCC on multiple occasions, with respect to their compliance with both federal and non-preempted state laws.

28. Maryland law provides that First Franklin and NCMC are nonetheless required to hold a license from the Commissioner in order to engage in the residential mortgage business in Maryland, and the Commissioner has asserted full regulatory, supervisory, examination, and enforcement authority over First Franklin.

29. By letter dated June 29, 2004, the Office of the Commissioner informed First Franklin that it was of the opinion that First Franklin had issued a mortgage containing a prepayment fee that did not comply with Md. Code Ann. Com. Law § 12-105(b)(4)(ii). (Exhibit 3, hereto) The letter requested that First Franklin provide "a list of all Maryland residents charged a prepayment penalty after July 1, 2003." *Id.*

30. First Franklin responded by letter on July 20, 2004. In that letter, First Franklin informed the Commissioner that, as an operating subsidiary of a National Bank, it was authorized to charge prepayment fees under OCC regulations, including 12 C.F.R. § 34.23, and suggested that,

accordingly, there was no need for the Commissioner to obtain the requested list of Maryland residents. (Exhibit 4, hereto)

31. By facsimile dated July 28, 2004, the Office of the Commissioner forwarded to First Franklin a complaint letter received from a customer asking whether a prepayment fee contained in a mortgage issued by First Franklin was illegal under Maryland law. (Exhibit 5, hereto) The Office of the Commissioner requested that First Franklin investigate and respond within 10 days.

32. By letter dated August 11, 2004, First Franklin informed both the customer and the Commissioner that, pursuant to OCC regulations, including 12 C.F.R. § 34.23, the Maryland Prepayment Restriction does not apply to loans issued by First Franklin, and that the fee is collectible if the loan is paid in full within two years of issuance. (Exhibit 6, hereto)

33. A case or controversy between the parties exists requiring resolution by this Court.

## Claims for Relief

### Count I – Declaratory and Injunctive Relief:

### Preemption of Maryland Licensed Lenders Act By 12 U.S.C. §§ 24(Seventh), 484 and 12 C.F.R. § 7.4006

34. Plaintiffs incorporate and reallege each and every allegation contained in paragraphs 1 - 33 of this Complaint as though fully set forth herein.

35. Under the National Bank Act and other federal banking laws as well as OCC regulations interpreting those laws, the OCC has exclusive licensing, regulatory, supervisory, examination, and enforcement authority with respect to national banks' compliance with both federal and non-preempted state laws. *See* 12 U.S.C. §§ 24(Seventh), 484(a), 1818(b); 12 C.F.R. § 7.4000. National banks are not required to obtain or hold state licenses in order to do business in any state.

36. Under OCC regulation 12 C.F.R. § 5.34, national banks may establish, own, and operate operating subsidiaries to undertake only those activities that are authorized for a national bank

itself. This regulation provides that an operating subsidiary is also subject to ongoing licensing, regulatory, supervisory, examination, and enforcement authority by the OCC with respect to such subsidiary's compliance with both federal and non-preempted state laws.

37. Another OCC regulation further prescribes that "[u]nless otherwise provided by Federal law or OCC regulation, State laws apply to national bank operating subsidiaries to the same extent that those laws apply to the parent national bank." 12 C.F.R. § 7.4006.

38. The OCC has recently confirmed in interpretive letters and briefs as *amicus curiae* that, under 12 C.F.R. § 7.4006, an operating subsidiary is subject to the exclusive regulatory, supervisory, examination, and enforcement authority of the OCC, with respect to its compliance with both federal and non-preempted state laws, and is therefore not subject to such licensing, regulation, supervision, examination, and enforcement authority of a state regulator like the Commissioner. In prior cases, courts have found that "[t]he OCC's amicus brief and interpretive letter appear to be 'both persuasive and consistent with the National Bank Act and OCC regulations and thus at least 'entitled to respect.'" *E.g.*, *Wells Fargo Bank, N.A. v. Boutris*, 252 F. Supp. 2d 1065, 1072 (E.D. Cal. 2003) (quoting *Bank of America v. City and County of San Francisco*, 309 F.3d 551, 563 n.7 (9th Cir. 2002)).

39. The Maryland Mortgage Lender Law, in particular Sections 11-504, 11-513, and 11-515–16, which subject national banks' operating subsidiaries like First Franklin to ongoing licensing, regulation, supervision, examination, and enforcement by the Commissioner, is preempted as it applies to national bank operating subsidiaries by the exclusive federal licensing, regulatory, supervisory, examination, and enforcement powers of the OCC.

40. Under federal law, the OCC is the exclusive enforcer of all laws against national banks as well as their operating subsidiaries. First Franklin and NCMC, as operating subsidiaries of a national bank, need not hold a license from the State of Maryland in order to engage in the residential mortgage lending and servicing business in Maryland. The OCC has granted a license to National City

Bank of Indiana under 12 C.F.R. § 5.34 to conduct mortgage lending activities through First Franklin and NCMC.

41. The Maryland Mortgage Lender Law, in particular Md. Code Ann. Fin. Inst. §§ 11-504, 11-513, 11-515, and 11-516, as applied to national banks' operating subsidiaries, for purposes of empowering the Commissioner to regulate, supervise, or act as an enforcement official, is preempted under Article VI of the United States Constitution, by the National Bank Act, 12 U.S.C. §§ 24(Seventh) and 484, and by other provisions of the federal banking laws and OCC implementing regulations, because the OCC has exclusive licensing, regulatory, supervisory, examination, and enforcement authority over national banks' operating subsidiaries.

**Count II – Declaratory and Injunctive Relief:**

**Preemption of Maryland Licensed Lenders Act By**
**12 U.S.C. §§ 24(Seventh) and 484**

42. Plaintiffs incorporate and reallege each and every allegation contained in paragraphs 1 - 41 of this Complaint as though fully set forth herein.

43. National banks have authority under the National Bank Act to receive deposits, loan money, and to exercise "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24(Seventh).

44. The OCC's regulations implementing the National Bank Act provide that national banks are expressly authorized to establish and own operating subsidiaries, which are permitted to conduct only those activities that are lawful activities for the parent national bank itself. 12 C.F.R. § 5.34(d)(1). The OCC's regulations further provide that a national bank's operating subsidiary may exercise the parent national bank's enumerated federal lending and incidental powers to engage in the "business of banking" under 12 U.S.C. § 24(Seventh) on the same basis as the parent bank. *See* 12 C.F.R. §§ 5.34(e)(1), 7.4006. This interpretation was confirmed in recent OCC interpretive letters and in *amicus* briefs.

45. Maryland law subjects national banks' operating subsidiaries to ongoing state licensing, regulation, supervision, examination, and enforcement authority by the Commissioner in the face of the OCC's exclusive licensing, regulation, supervision, examination, and enforcement authority regarding such subsidiaries. By seeking to subject national banks' operating subsidiaries to such additional, ongoing state licensing, regulation, supervision, examination, and enforcement authority, Maryland law directly conflicts with national banks' ability to conduct their activities through federally licensed operating subsidiaries, including such banks' lending activities, as authorized by the National Bank Act and OCC regulations adopted pursuant to that Act.

46. The Maryland Mortgage Lender Law, in particular Md. Code Ann. Fin. Inst. §§ 11-504, 11-513, 11-515, and 11-516, therefore is preempted as applied to national banks' conduct of their federally-authorized activities through operating subsidiaries under Article VI of the United States Constitution and by 12 U.S.C. § 24(Seventh) and other provisions of the National Bank Act and federal banking laws, as they are implemented by the OCC's regulations, including 12 C.F.R. §§ 5.34 and 7.4006.

**Count III – Declaratory and Injunctive Relief:**

**Preemption of Md. Code Ann. Com. Law § 12-105(b)(4) By 12 U.S.C. § 371 and Implementing OCC Regulations**

47. Plaintiffs incorporate and reallege each and every allegation contained in paragraphs 1 - 46 of this complaint as fully set forth herein.

48. Pursuant to 12 U.S.C. § 371(a), "[a]ny national banking association may make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate, subject to section 1828(*o*) of this title and such restrictions and requirements as the Comptroller of the Currency may prescribe by regulation or order." Under this statute, the OCC has promulgated a regulation, codified at 12 C.F.R. § 34.23, expressly providing that: "A national bank offering or purchasing ARM loans may impose fees for prepayments notwithstanding any State law limitations to the contrary." *See also id.* § 34.21 ("A national bank and its subsidiaries may make, sell, purchase, participate in, or

otherwise deal in ARM loans and interests therein without regard to any State law limitations on those activities.”).

49. In conflict with the express terms of the OCC’s regulations, including 12 C.F.R. § 34.23, Md. Code Ann. Com. Law § 12-105(b)(4) purports to limit the amount of prepayment fees that can be charged by a national bank operating subsidiary.

50. Md. Code Ann. Com. Law § 12-105(b)(4) is therefore expressly preempted by the OCC’s regulations, including 12 C.F.R. §§ 34.21 and 34.23, and as a result is invalid under Article VI of the United States Constitution.

**Prayer for Relief**

WHEREFORE, Plaintiffs National City Bank of Indiana, First Franklin Corporation, and National City Mortgage Co. demand judgment against defendant Charles W. Turnbaugh, in his official capacity as Commissioner of Financial Regulation, Maryland Department of Labor, Licensing, and Regulation, for the following relief:

A. A judgment declaring that the Maryland Mortgage Lender Act, as applied to national banks’ operating subsidiaries, and as applied to national banks’ conduct of their federally authorized activities through such subsidiaries, is null and void and unenforceable because it is preempted under Article VI of the United States Constitution, by the National Bank Act, and by implementing OCC regulations;

B. A judgment declaring that the Maryland Prepayment Penalty Restriction, Md. Code Ann. Com. Law § 12-105(b)(4), is null and void and unenforceable against Plaintiffs because it is expressly preempted under Article VI of the United States Constitution by 12 U.S.C. § 371 and implementing OCC regulations, including 12 C.F.R. §§ 34.21 and 34.23;

C. A permanent injunction, Plaintiffs having no adequate remedy at law and suffering irreparable injury as a result of these unconstitutional state laws, enjoining Defendant and his agents from enforcing or taking any action to enforce the Maryland Mortgage Lender Law and the

Maryland Prepayment Restriction against Plaintiffs; from taking any action to prevent or interfere with, both directly and indirectly, Plaintiffs' business operations in Maryland (including taking any actions to penalize Plaintiffs); and from otherwise exercising visitorial powers over Plaintiffs;

D. A preliminary injunction pending final resolution of this action, Plaintiffs having no adequate remedy at law and suffering irreparable injury as a result of these unconstitutional state laws, enjoining Defendant and his agents from enforcing or taking any action to enforce the Maryland Mortgage Lender Law and the Maryland Prepayment Restriction against Plaintiffs; from taking any action to prevent or interfere with, both directly and indirectly, Plaintiffs' business operations in Maryland (including taking any actions to penalize Plaintiffs); and from otherwise exercising visitorial powers over Plaintiffs;

E. An award to Plaintiffs of their reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

F. The grant to Plaintiffs of such other and further relief, including costs, as the Court may deem just and proper.

Respectfully submitted,

________________________________

E. EDWARD BRUCE (*pro hac vice* pending)
STUART C. STOCK (*pro hac vice* pending)
ROBERT A. LONG, Jr. (*pro hac vice* pending)
KEITH A. NOREIKA (*pro hac vice* pending)
EMILY JOHNSON HENN (D. Md. No. 26107)
BENJAMIN C. BLOCK (D. Md. No. 15811)
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 662-6000
Fax: (202) 662-6291

ATTORNEYS FOR PLAINTIFFS

Dated: August 20, 2004